DAVID M. PARKS vs. ORIN E. LIBBY.

Somerset.    Opinion November 14, 1898.

*Negligence.    Contract.    Damages.    New Trial.*

The defendant made a contract with the plaintiff to drive a quantity of logs from Pittsfield to Clinton for $142; but before the drive was started the plaintiff sold the logs to one McNally of Clinton for $1443. In an action against Parks for failure to deliver all of the logs, McNally recovered judgment for $402 as damages for the shortage.

The present action was to recover damages for Libby's failure to drive the logs in a proper manner; and secondly, for breach of his alleged agreement to assume and pay the amount which McNally might recover in the action against Parks. The verdict was for the defendant.

*Held;* That the rule of damages in the two actions was not the same. The defendant might be liable for such damages as arose from his negligence in driving the logs, while Parks was liable to McNally for not delivering the logs according to an agreement of sale. One stood in the position of a bailee, and the other in that of a seller of logs.

A new trial will not be granted by the law court when the court might possibly have reached a conclusion different from the verdict rendered, but there was testimony in behalf of the defendant in support of all of his contentions and if full credence were given to this evidence, it was sufficient to warrant the findings of the jury; nor when after a careful examination of all the facts reported, this court is not prepared to say that the result necessarily indicated prejudice or misapprehension on the part of the jury, or that a contrary result was the only reasonable one.

See *Parks* v. *Libby*, 90 Maine, 56.

ON MOTION BY PLAINTIFF.

Assumpsit.

The writ in this action contains two counts. The first count is brought on the following contract:

"PITTSFIELD, ME., Feb. 1, 1893.

I this day agree to drive what logs and cedar D. M. Parks has or will have just above Peltoma to put on this winter to be driven to Clinton for 75-100 dollars per M. for the logs and 30-100 dollars per cord for the cedar; to be done in a good workmanlike manner this coming spring. Said Parks is to pay me as soon as the logs and cedar is delivered in the booms at Clinton.    O. E. LIBBY."

The plaintiff contended and introduced evidence tending to show the following facts:—That the lumber spoken of in this contract was afterwards, before the time came to drive it down the river, sold to one McNally—Parks agreeing to deliver it into the boom of McNally at Clinton. At that time McNally had a saw-mill on the east end of the dam at Clinton, and just above his mill was his small boom used to hold logs to be sawed after they had been run down from his larger storage boom half a mile above on the same side of the river.

At the same time William Lamb had a saw-mill on the west end of the same dam and he had booms like McNally's for the same purpose; all said booms being in the same large mill pond formed by a dam extending across the Sebasticook river at Clinton Village in Kennebec County. This condition of dams was well known to Libby at that time.

The reason why the word "booms" was used in the contract was that Parks, the plaintiff, expected to sell the lumber to one or both of these Clinton mill owners—he did not know which one. He so stated to Libby, the defendant, when the above contract was written, and that is the reason why the place of destination of the lumber was left so indefinite. It made no difference in expense of driving, because the booms were opposite each other and in the same mill pond. It was really a little less expensive to put the lumber into one boom than into two.

Before the driving season came around Mr. Parks informed Mr. Libby, the defendant, which boom to land the lumber in, namely, McNally's, and before Libby started the lumber he wrote to McNally to have his boom ready for the lumber. So the plaintiff claimed that Mr. Libby understood that he was to deliver the lumber into McNally's boom at Clinton.

The plaintiff further contended that the defendant started in on his job, but carried it on so unworkmanlike that he failed to drive all the lumber into McNally's boom, but lost a great portion of it by the way on his passage down the river.

Mr. McNally, failing to get his lumber, threatened Parks, the plaintiff, with suit for failure to deliver into his boom the logs that

were lost.   Mr. Parks called Mr. Libby's attention to McNally's claim.   Libby was requested by Parks to take charge of the matter, and he agreed to do so, but did not.

No settlement having been effected, McNally brought suit.   A conference was had between Parks and Libby, and Libby decided that an offer to be defaulted for the sum of $125.00 should be made by the attorney, whom Parks had employed to defend the suit.   Mr. McNally refused the offer, and then, under the direction of Libby, the action was tried, resulting in a verdict of $402.00 against Parks.

Before the action was tried, Mr. Libby told Parks and his attorney that he would pay McNally $125.00, and that if McNally would not take that sum in discharge of the claim, he, Libby, would prefer to defend against the claim, and the defense was made by his direction.

After the verdict was returned by the jury, Parks by his attorney who had charge of the defense, filed a motion for a new trial.   After that, Parks and Libby had a conference at Pittsfield, in which they discussed the propriety of attempting to get a new trial.   At the close of that conference Libby told Parks and his attorney that he did not want to carry the case any further. He said he had not the means by him then to settle it, but he said to Parks that if he, Parks, would pay what was due McNally including the verdict and costs, he, Libby, would in a few days pay to Parks whatever the sum paid to McNally might be.

Thereupon, Parks, the plaintiff, paid McNally $490.00, the amount to which the latter was entitled to under the verdict and the costs,—which Libby has never paid back to him, although he has frequently been requested by Parks to pay it.

Under the second count in his writ the plaintiff seeks to recover the sum so paid and what expenses the plaintiff incurred in the trial of the McNally suit.

The defendant on the other hand introduced evidence which he contended proved that he had performed his written contract; that he delivered all the lumber into McNally's boom ; that he took no part in the McNally suit, had no connection with that action

except as a witness for Parks, made no promises before the trial or after it to pay what McNally recovered against Parks, and owes Parks nothing on account of the transaction.

The jury returned a verdict for the defendant and the plaintiff pleaded a general motion for a new trial.

*S. S. and F. E. Brown,* for plaintiff.

*F. W. Hovey and F. J. Martin,* for defendant.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

WHITEHOUSE, J.   The defendant made a written contract with the plaintiff to drive a quantity of logs down the Sebasticook river from Pittsfield to Clinton at an agreed price for the driving, which amounted to $142 for the lot.

Before the drive was started the plaintiff sold the logs to one McNally of Clinton under a contract calling for a specified quantity, to be delivered at McNally's boom, for $1443, and received payment therefor.

But McNally failed to receive the entire quantity purchased and paid for by him, and in an action against Parks for failure to deliver all of the logs, McNally recovered judgment for $402 as damages for the shortage.

Thereupon Parks brought the present action against the defendant Libby to recover, first, for his failure to perform the original contract to drive the logs in a proper manner; and second on Libby's alleged agreement to assume and pay the amount which McNally might recover in the action against Parks.

The jury returned a special finding that the defendant Libby was not liable for any failure to perform his original contract to drive the logs in a suitable and workmanlike manner, and also rendered a general verdict for the defendant.

The case comes to this court on the plaintiff's motion to set aside this verdict and special finding as against the evidence.

As stated in the opinion in *Parks* v. *Libby,* 90 Maine, p. 60, "the rule of damages in the two actions is not the same. The

defendant may be liable for such damages as might arise from neg-
ligence, while the plaintiff in the other action against him was
liable for damages arising for not delivering a certain quantity of
logs according to an agreement of sale. .One stands in the position
of a bailee and the other in that of a seller of logs."

The plaintiff contends that all the damages suffered by McNally
and himself were attributable directly to the failure of the defend-
ant to perform his contract in driving the logs. He says there was
unnecessary delay in starting the drive; that the rafts were of such
excessive width as to be unmanageable; that the rafts were not
manned with sufficient crew, nor the men equipped with suitable
implements; and that by reason of these things and of a want of
reasonable and ordinary foresight, skill and prudence, the defend-
ant failed to drive the logs to the lower McNally boom, but became
discouraged and left the greater part of them at a temporary boom
three-fourths of a mile above the point agreed upon.

The defendant took issue upon each of these propositions set up
by the plaintiff. He contended in the first place that there were
not so many logs at the landing in Pittsfield as the plaintiff under-
took to sell to McNally; that he discovered a shortage of eleven
hard wood logs before he started the drive and that the same ratio
of shortage in the other lumber, together with the small loss
actually sustained in the drive which no ordinary care and skill
could prevent, would fully account for all the logs which McNally
purchased, but failed to receive. He admitted that the greater
part of the logs were left by him at the temporary boom three-
fourths of a mile above McNally's lower boom, but claimed that
this was done under an arrangement with McNally, whereby the
logs were practically accepted at the upper boom. And McNally
admits in his testimony that he agreed to employ men for the
defendant, and have the logs driven to the lower boom under his
own supervision and that this agreement was carried out by him.

A careful examination of all the evidence relating to the several
issues raised in regard to the defendant's manner of performing
the original contract, induces the belief that the court might possi-
bly have reached a different conclusion from that announced by

the jury; but there was testimony in behalf of the defendant in support of all of his contentions, and if full credence were given to this evidence, it was sufficient to authorize the findings of the jury; and the court is not prepared to say that the result necessarily indicated prejudice or misapprehension on the part of the jury or that a contrary result was the only reasonable one.

With respect to the plaintiff's second contention, that the defendant recognized his liability in his negotiations for settlement of the McNally claim, and in consulting and advising with the present plaintiff at that trial, and that he finally assumed and agreed to pay any judgment McNally might recover, the testimony was also conflicting. It is not improbable that some of the jury may have been influenced in some degree by a consideration of the hardship upon the defendant in compelling him to pay $700 damages on account of an undertaking for which he was to recover in any event but $142, and from which in fact he realized no profit whatever; but upon this branch of the case, as upon the former, there was legitimate and material evidence, which if believed was sufficient to support the verdict. It was a simple issue of fact, which the jury were well qualified to determine. They saw the witnesses and heard their testimony and we do not feel justified in declaring the verdict to be so manifestly wrong as to demand the interposition of the court in setting it aside.

*Motion overruled.*